NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SMITH, *et al.*,<br><br>                               Plaintiffs,<br>v.<br><br>CITIMORTGAGE, INC.,<br><br>                               Defendant. | Civil Action No.: 15-7629 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

Presently before the Court is Defendant's motion to dismiss (ECF No. 6 ("Def.'s Mot.") Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Jurisdiction is premised upon 28 U.S.C. § 1332(d). (*See* ECF 1 ¶ 4.) No oral argument was heard pursuant to Rule 78 of the Federal Rules of Civil Procedure. After considering the submissions of the parties in support of and in opposition to the instant motion, Defendant's motion to dismiss is granted in part and denied in part.

**I.    BACKGROUND[1]**

Plaintiffs are a married couple residing in a home in Metuchen, New Jersey. Compl. ¶ 3. In 2006, Plaintiffs refinanced their mortgage debt with a $693,000 loan from ABN AMRO Mortgage Group, Inc. *Id.* ¶ 6. Thereafter, in 2006 or 2007, the servicing of Plaintiffs' mortgage was transferred to Defendant. *Id.* ¶ 7. A couple of years later, in 2009,

---

[1] The Court has accepted the allegations pled in Plaintiffs' Complaint as true for purposes of the present motion.

1

"the federal government implemented a program known as the Home Affordable Modification Program ('HAMP') to incentivize participating mortgage servicers to assist struggling homeowners at risk of foreclosure by modifying existing mortgage obligations pursuant to standardized mortgage modification guidelines and procedure." *Id.* ¶ 8. This matter concerns Plaintiffs' efforts to obtain a loan modification through Defendant.

"On or about May 10, 2009, Plaintiffs contacted Defendant to apply for a HAMP modification and submitted the required income and hardship information for Defendant's determination of Plaintiffs' eligibility." *Id.* ¶ 14. "On June 30, 2009, Plaintiffs contacted Defendant to inquire as to the status of their HAMP application." *Id.* ¶ 15. Plaintiffs allege that "Defendant represented to Plaintiffs that they were approved for a HAMP modification, and that "Plaintiffs' monthly mortgage payment would be reduced from $6,091.10, inclusive of escrows for real estate taxes and homeowners insurance premiums, to $4,088.69 effective with the payment due in July [2009]." *Id.* ¶¶ 15-16. Plaintiffs further allege that Defendant told Plaintiffs that the "modification would become permanent if Plaintiffs [(1)] paid the modified amount for the next three months," and (2) "sign[ed] and return[ed] documentation that would be provided by Defendant at the end of the three-month trial period." *Id.* ¶ 16. As of the June 30 phone call, "Plaintiffs were current on their mortgage obligation." *Id.* ¶ 17.

In accordance with the June 30 phone call, Plaintiffs timely made the first trial payment (due on July 20, 2009). *Id.* ¶¶ 16-18. On August 3, 2009—before Plaintiffs' August trial payment was due—"Defendant advised Plaintiffs that their account was in default and that the total past due amount was $12,406.93, including $224.73 in late charges." *Id.* ¶ 19. Plaintiffs responded to Defendant's August 3 letter in writing on August

2

12, 2009, advising "Defendant that, among other things, Plaintiffs were approved for a loan modification on June 30, 2009, had paid the modified payment of $4,088.69 prior to the 20th of the month as scheduled, their mortgage was current prior to the approval of the loan modification, and requested that Defendant cease and desist all collection efforts as Plaintiffs' mortgage was not in default." *Id.* ¶ 20. Defendant responded in writing on August 18, 2009, notifying Plaintiffs "that it requested its Collections Department to remove Plaintiffs' account from any future call out programs." *Id.* ¶ 21. Thereafter, Plaintiffs timely made the August and September 2009 trial payments. *Id.* ¶ 22.

After timely making all three trial payments, Plaintiffs contacted Defendant to finalize the loan modification. *Id.* ¶ 23. On September 22, 2009, Plaintiffs allege that Defendant directed Plaintiffs to their Loss Mitigation Department ("LMD") in lieu of finalizing the modification at that time. *Id.* ¶ 24. When Plaintiffs contacted Defendant's LMD, they were advised "that there was a backlog in the processing of modifications and in the interim that Plaintiffs should continue to make timely payments and to inquire at a later date." *Id.* ¶ 25. Plaintiffs continued making timely modified monthly loan payments in accordance with Defendant's instructions. *Id.* ¶ 45.

Plaintiffs followed up about the status of the loan modification on January 21, 2010. *Id.* ¶ 26. Plaintiffs assert that, for the first time, Defendant advised Plaintiffs "that the investor owning Plaintiffs' loan did not participate in HAMP and, therefore, Plaintiffs would need to apply for a modification under Defendant's modification program." *Id.* ¶ 26. Plaintiffs applied for Defendant's loan modification program on January 21, 2010. *Id.* ¶ 26. The application was denied. ¶ 28. Plaintiffs applied again for a loan modification from Defendant in July 2010 and again in November 2010, both applications also were

3

denied. *Id.* ¶ 28. Plaintiffs assert that they timely supplied all information requested for these applications. *Id.* ¶¶ 32-37.

On June 24, 2010, Plaintiff received the first of six "New Jersey Notice of Default and Intention to Foreclose ('NOI') notices." *Id.* ¶¶ 41-43. "Despite the denial of Plaintiffs' modification applications and Defendant's issuance of NOIs, Defendant directed Plaintiffs to continue making payments [on their loans]." *Id.* ¶ 44. Plaintiffs continued to make the modified payments through October 2010, and began increasing the amount thereafter. *Id.* ¶¶ 45-47. From January 2011 to March 2011, Plaintiffs made timely payments of $6,144.21. *Id.* ¶ 48. On February 7, 2011, "Defendant informed Plaintiffs that their loan had been referred to a law firm to begin foreclosure proceedings," and Defendant returned the February and March 2011 payments as "insufficient to cure Plaintiffs' delinquency." *Id.* ¶¶ 50-51. Plaintiffs did not remit any more payments after March 2011. *Id.* ¶ 52. Effective June 29, 2013, the servicing of Plaintiffs' loan was transferred to Statebridge Company, LLC, and "[o]n or about November 12, 2013, Statebridge issued a Notice of Intention to Foreclose" on their home. *Id.* ¶ 55. Plaintiffs obtained foreclosure counsel to contest the foreclosure. *Id.* ¶ 57. Separately, Plaintiffs filed the complaint in this matter against Defendant alleging claims for breach of contract, violation of New Jersey's Consumer Fraud Act, promissory estoppel, breach of the covenant of good faith and fair dealing, restitution, unjust enrichment, common law fraud, equitable fraud, and negligent misrepresentation. Defendant has moved to dismiss all of these claims. Plaintiffs do not oppose dismissal of the breach of the covenant of good faith and fair dealing and restitution claims. *See* Pls.' Opp'n at 23.

II.   **LEGAL STANDARDS.**

Under Rule 8(a), for a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Pursuant to Federal Rule of Civil Procedure 9(b):

> [A] plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which [it is] charged. To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.

*Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (internal quotations and citations omitted, alteration in original). Thus, for claims involving allegations of fraud, this heightened pleading standard of Rule 9(b) must be met.

### III. DISCUSSION

#### A. Defendant's Arguments That Plaintiffs' Claims Are Time Barred

Defendant argues that all of Plaintiffs' claims are subject to a six-year statute of limitations as set forth in N.J.S.A. § 2A:14-1. Def.'s Mot. at 7. Defendant argues that "at least one court in this district has held that a cause of action premised on a lender's alleged mishandling of a loan modification application accrued no later than the date on which the

5

requested modification was denied." *Id.* at 8 (citing *Slimm v. Bank of Am. Corp.*, No. 12-5846, 2013 WL 1867035, at *11 (D.N.J. May 2, 2013). Using this when denied accrual point as a guide, Defendant argues that Plaintiffs' claims clearly accrued, at the latest, on August 12, 2009 when Plaintiffs sent Defendant a letter contesting that their loan was in default. *Id.* Because Plaintiffs did not file the complaint until September 21, 2009, Defendant argues that Plaintiffs' claims are time-barred. *Id.*

Plaintiffs do not contest the limitation periods put forward by Defendant. Pls.' Opp'n at 11. Instead, Plaintiffs argue that Defendant first breached the agreement to modify their loan on September 22, 2009, the date that Defendant referred them to the LMD rather than proceeding with the loan modification as soon as Plaintiffs had met the contingent requirements of the alleged agreement. *Id.* at 10-11.

As the Third Circuit has recently stated:

> [W]hile a court may entertain a motion to dismiss on statute of limitations grounds, it may not allocate the burden of invoking the discovery rule in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense. This distinction comes to the fore here, where the applicability of the discovery rule is not evident on the face of the complaint but the plaintiff also does not plead facts that unequivocally show that the discovery rule does not apply.

*Schmidt v. Skolas*, 770 F.3d 241, 251 (3d. Cir. 2014) (internal citations omitted). Here, the Court finds that Plaintiffs have not "pleaded [themselves] out of court" because their allegations do not affirmatively demonstrate on the face of the complaint that the action accrued prior to September 22, 2009. This is true even for the misrepresentation claims. *See* Def.'s Reply at 3 n.2. Plaintiffs do not allege knowing Defendant's statements were misrepresentations until at least September 22, 2009. Although Defendant had sent them a default notice in August 2009, Plaintiffs allege that Defendant's subsequent August 18,

2009 letter acknowledging that the loan was not in default did not put them on notice of any issue. They argue that, in fact, they continued with the trial payments thereafter pursuant to the alleged agreement. Thus, it was not until they had fulfilled their trial obligations and Defendant had not fulfilled its alleged obligations that the claims accrued. The Court, therefore, denies Defendant's motion to dismiss Plaintiffs' claims on the ground that they are time-barred as pled. Defendant is not precluded from re-raising this issue at an appropriate stage of the proceedings.

### B. Plaintiffs' Standing to Assert State-Law Claims Against Defendant

Defendant argues that there is no private right of action under HAMP, and that Plaintiffs therefore lack standing to bring their claims, all of which Defendant argues are based on an alleged offer of a HAMP modification. Def.'s Mot. at 9 (citing *Sinclair v. CitiMortg., Inc.*, 519 Fed. App'x 737, 739 (3d Cir. 2013), and *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 559 n.4 (7th Cir. 2012), among other cases). Defendant further argues that "a borrower cannot avoid dismissal merely by attempting to recast their HAMP-based claims as arising on state law." *Id.* at 10 (citing *Slimm*, 2013 WL 1867035, at *11). Plaintiffs argue that they are not bringing HAMP claims, and that they are not precluded from bringing state-law based claims. Pls.' Opp'n at 11-12.

*Sinclair* and *Wigod*, cited by Defendant, do not stand for the proposition that HAMP precludes bringing state-law based claims. The Third Circuit in *Sinclair*, citing to footnote 4 in *Wigod*, held that "HAMP does not provide a private right of action." 519 Fed. App'x at 738. The Seventh Circuit in footnote 4 in *Wigod* stated: "[S]ome homeowners tried to assert rights arising **under HAMP itself**. Courts have uniformly rejected these claims because HAMP does not create a private federal right of action for borrowers against

7

servicers." *Wigod*, 673 F.3d at 559 n.4 (emphasis added). In fact, the *Wigod* court held: "We then consider whether federal law precludes Wigod from pursuing her **state-law claims**, and we hold that it does not." *Id.* at 559 (emphasis added).

Furthermore, subsequent to the cases in this district cited by Defendant (*see, e.g., Slimm* and *Bijeau-Seitz v. Atl. Coast Mortgage Servs., Inc.*, No. 12-6372, 2013 WL 3285979, at *6 (D.N.J. June 28, 2013)), New Jersey appellate courts have decided three cases adopting the Seventh Circuit's *Wigod* position that HAMP does not preclude state-law based claims. *See Aiello v. OceanFirst Bank*, No. C-82-13, 2015 WL 7261740, at *3-4 (N.J. Super. Ct. App. Div. Nov. 18, 2015) ("HAMP's preclusion of private causes of action would not prevent a borrower from pursuing state law claims arising from the breach of an underlying temporary contractual arrangement pending the lender's review under the HAMP guidelines. . . . [B]oth *Arias* and *Miller* make it evident that a common-law breach of contract action based upon a trial period plan is permissible."); *Miller v. Bank of America Home Loan Servicing*, 110 A.3d 137, 142-143 (N.J. Super. Ct. App. Div. 2015) (Mar. 5, 2015) (recognizing that "[p]rior unreported opinions by the United States District Court for the District of New Jersey have discussed HAMP's bar of a private cause of action as precluding suits alleging a state contract law theory of liability," and rejecting that position); *Arias v. Elite Mortgage Group, Inc.*, 108 A.3d 21 (N.J. Super. Ct. App. Div. 2015) (Jan. 23, 2015) (favorably citing *Wigod* and not precluding the plaintiff's state law claims as a matter of law). Defendant states that these cases "do not support the conclusion assert by Plaintiffs." Def.'s Reply at 4. This Court disagrees.

The recent New Jersey cases are only different than the present case in that they were all decided on summary judgment, with the *Arias* and *Miller* courts finding against

Plaintiffs because no facts supported that they had timely made the trial payments as agreed, and the *Aiello* court denying summary judgment to either party. *See Arias*, 108 A.3d at 24-25; *Miller*, 110 A.3d at 143-44; *Aiello*, 2015 WL 7261740, at *4. It may be that there are other differentiating facts developed through discovery, but, at this stage taking the facts as pled by Plaintiffs as true, the Court finds that Plaintiffs are not precluded from pursuing their state-law claims.

### C. Breach of Contract

Under New Jersey law, "[t]o state a claim for breach of contract, [a plaintiff] must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico*, 507 F.3d at 203. Here, Defendant argues that "[t]rial payment plans are 'explicitly not enforceable offers for loan modifications.'" Def.'s Mot. at 12. This position has been expressly rejected by the recent decisions of the New Jersey appellate courts discussed above. This does not mean that every trial plan will be enforceable, but they are not all *per se* unenforceable as Defendant argues. Here, Plaintiffs essentially allege—like in *Arias*—that Defendant made "'a unilateral offer,' pursuant to which [Defendant] promised to give plaintiffs a loan modification, *if and only if* plaintiffs complied fully and timely with their obligations under the [trial contractual agreement], including making all payments timely and providing documentation as required." *See* 108 A.3d at 24-25 (citing *Wigod*); Compl. ¶¶ 58-65. They further alleged that they complied with Defendant's requirements, but that Defendant did not fulfill its obligations. Compl. ¶¶ 60-64. The Court finds such allegations sufficient to plead a contract and breach of a contract at this stage.

9

Defendant next argues that, even if there were a contract, it was oral, which violates the statute of frauds and provisions of the mortgage contracts. Def.'s Mot. at 12-13. Such arguments may prevail at a later stage, but they are not persuasive at this stage given that Plaintiffs' have pled that Defendant confirmed in writing that the loan was not in default in response to Plaintiffs' written letter regarding the alleged trial payment plan. Exactly what was agreed to, whether it was in a form to survive summary judgment, and any effect of the mortgage documents relative to the alleged trial contractual arrangement is not the present question before the Court, which must accept as true the facts as pled by Plaintiffs.

Defendant also argues that Plaintiffs' breach of contract claim fails because they have inadequately pled damages as the payments they made were required under the existing mortgage contracts. Def.'s Mot. at 12-13; Def.'s Reply at 8-9. Plaintiffs' argue that they were damaged by making sixteen months of payments in reliance on the trial plan agreement and by incurring costs related to Defendant's foreclosure action against them. *Id.* ¶¶ 45. 57, 65. First, Plaintiffs are seeking damages related to the foreclosure action, separate from the mortgage obligation. Second, Plaintiffs' home appears to be in foreclosure. Plaintiffs' position appears to be that they would not have or may not have made the sixteen months of payments from June 2009 absent the alleged agreement. In other words, Defendant not only has their home in foreclosure, but first extracted additional money that they would not have been paid absent the agreement. Because the Court finds that Plaintiffs have stated a claim for damages that are unrelated to the mortgage payments, it need not decide at this time whether the modified payments can be a basis for damages given the existing mortgage obligation. For these reasons, the Court finds that dismissal of Plaintiffs' breach of contract claim is not warranted at this time.

### D. New Jersey Consumer Fraud Act

The New Jersey CFA requires a showing that "the defendant engaged in an unlawful practice that caused an ascertainable loss to the plaintiff." *Frederico*, 507 F.3d at 202 (citing *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994)). The CFA defines an unlawful practice as:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise . . . .

N.J.S.A. § 56:8-2. Stated another way, "[u]nlawful conduct under the Act falls into three general categories: affirmative acts and knowing omissions, and violations of regulations promulgated under the Act." *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543, 558 (D.N.J. 2013) (internal citations omitted). An affirmative misrepresentation "has to be one which is material to the transaction . . . [and] made to induce the buyer to make the purchase." *Castro v. NYT Television*, 370 N.J. Super. 282, 294 (N.J. Super. Ct. App. Div. 2004) (citing *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 365 (N.J. 1997)). Rule 9(b)'s heightened pleading requirements apply to NJCFA claims. *Frederico*, 507 F.3d at 203.

The legislative history of the CFA reveals that, without exception, it is remedial legislation and, as such, "should be construed liberally." *Harnish v. Widener Univ. School of Law*, 931 F. Supp. 2d 641, 647 (D.N.J. 2013) (quoting *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 929 A.2d 1076, 1079 n.1 (2007)); *see also Gonzalez v. Wilshire Credit Corp.*, 25 A.3d 1103, 1115 (N.J. 2011) ("The CFA is intended to be applied broadly in order to accomplish its remedial purpose, namely, to root out

consumer fraud, and therefore to be liberally construed in favor of the consumer.") (internal citations and quotations omitted). Likewise, the CFA was intended to be "one of the strongest consumer protection laws in the nation." Governor's Press Release for Assembly Bill No. 2402, at 1 (June 29, 1971); *see also Gennari*, 691 A.2d at 364 ("The history of the [CFA] is one of constant expansion of consumer protection."). In *Arias*, the New Jersey Appellate Division made a similar observation in a case factually similar to this one. *See* 108 A.3d at 23 ("While there are no reported New Jersey cases addressing the contractual status of a TPP Agreement, case law suggests that an agreement that purports to bind a debtor to make payments while leaving the mortgage company free to give her nothing in return might violate the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8–1 to – 195.") (citing by analogy *Gonzalez*). Thus, this Court construes Plaintiffs' claim and supporting evidence liberally.

Defendant argues that Plaintiffs have failed to state a NJCFA claim because they have not identified "any unlawful conduct by CitiMortgage" (Def.' Mot. at 15), because any conduct alleged does not rise to level of an "unconscionable commercial practice" (*id.* at 16), because they have not specifically identified the representative who they allege made the representations (*id.* at 14), and because Plaintiffs have failed to allege an ascertainable loss (*id.* at 16-17). The Court addresses these arguments in turn.

First, Plaintiffs plainly allege that, on June 30, 2009, Defendant affirmatively misrepresented that Plaintiffs had been approved for a HAMP modification, and that, if Plaintiffs made certain trial payments and provided required documentation, that they would receive a permanent loan modification. Compl. ¶¶ 15-16. They allege that, not only had they not been approved for a HAMP modification, but that such a modification was

not even available for their loan. *Id.* ¶ 26. The Court agrees that these allegations sufficiently allege an affirmative misrepresentation.

Second, given that Plaintiffs' were not even eligible for a HAMP modification when they were told that they had been approved for such a modification, inducing them to remit additional timely loan payments, Plaintiffs argue that such allegations rise to a level protected by the NJCFA. Pls.' Opp'n at 21. This Court also agrees. *See also Arias*, 108 A.3d at 24-25.

Third, this Court also finds that Plaintiffs' allegations are sufficiently particular to meet the requirements of Rule 9(b). This Court reviews many complaints that are pled with bare allegations making mostly conclusory legal arguments. Plaintiffs' Complaint is not that. It provides detailed factual allegations. With respect to the "unnamed representative," it appears that Plaintiffs do not know and have no way of identifying the person by name. Presumably, they did not realize on the date of the call, when they thought they had been approved for a modification, that the specific representative's name may be needed years later. The Court agrees with Plaintiffs that they provided sufficient, specific details of the June 30, 2009 call for Defendant to identify through its internal records the call at issue. Rule 9(b) is meant to put a defendant on sufficient notice, not to block a claim where the information is in Defendant's control.

Finally, for the reasons stated in the breach of contract discussion above, the Court finds that Plaintiffs have stated a sufficient ascertainable loss to survive a motion to dismiss. Therefore, the Court also denies dismissal of Plaintiffs' NJCFA claim at this time.

### E.   Common Law Fraud and Negligent Misrepresentation

Defendant argues that Plaintiffs' fraud and negligent misrepresentation claims are barred by the economic loss doctrine. *See* Def.'s Mot. at 26; Def.'s Reply at 11. Generally, "[u]nder New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 280 (2002). However, because courts handle economic loss arguments differently depending on the claim being challenged, the Court will address each separately.

"To state a claim for fraud under New Jersey law, a plaintiff must allege (1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damage." *Frederico*, 507 F.3d at 200. Generally, while fraud claims intrinsic to the contract are generally barred by the economic loss doctrine, "fraud claims that are extrinsic to the underlying contract," such as for fraudulent inducement, are not. *Touristic Enterprises Co. v. Trane, Inc.*, No. 09-2732, 2009 WL 3818087, at *2 (D.N.J. Nov. 13, 2009); *see also D & D Assocs. Inc. v. Bd. of Educ. of N. Plainfield*, No. 03-1026, 2012 WL 1079583, at * 36 (D.N.J. Mar.30, 2012) ("Whether a tort claim can be asserted alongside a breach of contract claim depends on whether the tortious conduct is extrinsic to the contract between the parties."). Here, Plaintiffs' common law fraud claim is based on the same set of facts as their contract claim. Plaintiffs plead no facts suggesting an alternative theory of the case that is not governed by contract or that alleges that the fraudulent conduct is extrinsic to the alleged contractual relationship. Therefore, the Court dismisses this claim without prejudice.

To establish a claim for negligent misrepresentation, a party must show "[a]n incorrect statement, negligently made and justifiably relied on, which results in economic loss." *Konover Constr. Corp. v. E. Coast Constr. Servs. Corp.*, 420 F. Supp. 2d 366, 370 (D.N.J. 2006) (quotations omitted). A plaintiff must further allege that the defendant owed him a duty of care. *See Kronfeld v. First Jersey Nat. Bank*, 638 F. Supp. 1454, 1465 (D.N.J. 1986). Here, Defendant argues that the negligent misrepresentation claim is barred by the economic loss doctrine because Plaintiffs have not alleged any duty of care. Def.'s Mot. at 26-27. It is well settled in New Jersey that negligent misrepresentation claims are barred by the economic loss doctrine where a plaintiff has not identified a duty owed independent of the contractual relationship. *See Perkins v. Washington Mutual, FSB*, 655 F. Supp. 2d 463, 471 (2009) (finding that the economic loss doctrine barred a negligence claim brought by a plaintiff mortgagor against a defendant mortgagee, because both were parties to the mortgage contract and there was no other duty owed). If a defendant owes a duty of care separate and apart from the contract between the parties, then a tort claim such as negligence may lie. *See Saltiel*, 788 A.2d at 280. Here, the Court agrees with Defendant that Plaintiffs have alleged no independent duty of care separate and apart from the alleged contractual relationship. Therefore, the Court also dismisses Plaintiffs' negligent misrepresentation claim without prejudice.

### F.   Equitable Fraud

"Depending on the remedy sought, an action for fraud may be either legal or equitable in nature." *Jewish Center of Sussex v. Whale*, 432 A.2d 521, 524 (N.J. 1981). "[A] plaintiff that asserts equitable fraud is not entitled to recover monetary damages; he or she may recover only in equity." *Dutton Road Assoc. LP v. Sunray Solar, Inc.*, No. 10-

5478, 2011 WL 1375681, at *2 (D.N.J. Apr. 12, 2011) (citing *See Nolan by Nolan v. Lee Ho*, 577 A.2d 143 (N.J. 1990)). Here, as Defendant argues (*see* Def.'s Mot. at 19-20), Plaintiffs seek only monetary, not equitable relief. Therefore, Plaintiffs' equitable fraud claim is also dismissed without prejudice.

### G. Promissory Estoppel and Unjust Enrichment

Claims for promissory estoppel and unjust enrichment are quasi-contract theories of recovery. *See Jones v. Marin*, No. 07-738, 2009 WL 2595619, at *6 (D.N.J. Aug. 20, 2009). Defendant argues that "liability is precluded where the subject matter of the claim is governed by express contract, in which case the plaintiff is limited to contractual remedies." Def.'s Mot. at 25. The Court agrees with Defendant's general statement of the law. *See Jones*, 2009 WL 2595619, at *6 ("Claims in quasi-contract cannot be maintained where a valid contract fully defines the parties' respective rights and obligations."). However, Federal Rule of Civil Procedure 8(a)(3) permits pleading in the alternative, and quasi-contract claims may proceed even where a contract exists where there is an alternate theory pled or the existence of a contract is in dispute. *See Kantor v. Hiko Energy, LLC*, No. 14-5585, 2015 WL 1650049, at *7 (E.D. Pa. Apr. 14, 2015); *Fleisher v. Fiber Composites*, No. 12-1326, 2012 WL 5381381, at *14 (E.D. Pa. Nov. 2, 2012 ("[P]laintiffs may plead alternative theories of breach of contract and unjust enrichment where there is any question as to the validity of [the] contract in question."); *see also Goldsmith v. Camden County Surrogate's Office*, 975 A.2d 459, 464 (N.J. Super. Ct. App. Div. 2009). But, "at the end of the day, both counts cannot co-exist." *Kantor*, 2015 WL 1650049, at *7.

Here, Plaintiffs have not pled two alternative causes of action; the claims for promissory estoppel and unjust enrichment are based on the same facts and theory as their contract claim. Additionally, neither party disputes that a contract governs the relationship, although they do dispute which contract governs the present dispute. The Court therefore also dismisses these claims without prejudice.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is granted in part and denied in part. An appropriate Order accompanies this Opinion.

DATED: December 22, 2015

_____
JOSE L. LINARES
U.S. DISTRICT JUDGE