## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

James M. Smith, Cathlene Y.
Banker,

      *Plaintiffs*,

    v.

CitiMortgage, Inc.,

      *Defendant.*

Civil Action No. 15-7629
(MEF)(JSA)

**OPINION and ORDER**

## Table of Contents

I.  Background

    A. Evidence

    B. Procedural History

    C. The Motions

II. The Summary Judgement Standard

III. The Defendant's First Summary Judgment Argument:
The Breach of Contract Claim Is Time-Barred

    A. General Principles

    B. The Defendant's Argument Is Not Persuasive

IV. The Defendant's Second Summary Judgment Argument: The New
Jersey Consumer Fraud Act Claim Is Time-Barred

V. The Defendant's Third Summary Judgment Argument:
The Statute of Frauds Bars the Breach of Contract Claim

VI. The Defendant's Fourth Summary Judgment Argument:
The Mortgage Barred Verbal Alterations

VII. The Defendant's Fifth Summary Judgment Argument:
Lack of Specificity

VIII. The Defendant's Sixth Summary Judgment Argument:
       Unlawful Conduct Under The Consumer Fraud Act

IX. The Defendant's Seventh Summary Judgment Argument: Loss
    Under The Consumer Fraud Act

X. The Plaintiffs' First Summary Judgment Argument:
   Loss Under The Consumer Fraud Act

XI. The Plaintiffs' Second Summary Judgment Argument:
    Unlawful Conduct Under The Consumer Fraud Act

XII. Conclusion

Two mortgage holders called their bank and reached an agreement, they claim, to eventually modify their mortgage.

No modification was made, and the mortgage holders sued the bank, essentially for breach of the alleged agreement.

The mortgage holders and the bank now each move for summary judgment.

The motions are denied.

## I.    Background

### A. Evidence

Two people ("the Plaintiffs"[1]) had a home mortgage loan.  See CitiMortgage Statement of Undisputed Material Fact ¶¶ 1, 4 ("Defendant's Rule 56 Statement"); Plaintiffs' Statement of Material Facts Not in Dispute ¶ 1 ("Plaintiffs' Rule 56 Statement").  Before the events at issue here, the mortgage was transferred to a particular bank ("the Defendant"[2]).  See Defendant's Rule 56 Statement ¶ 1; Plaintiffs' Rule 56 Statement ¶ 2.  The mortgage required the Plaintiffs to pay about $6,000 a month to the Defendant.  See Defendant's Rule 56 Statement ¶ 18; Plaintiffs' Rule 56 Statement ¶ 5.

---

[1]  The Plaintiffs are James M. Smith and Cathlene Y. Banker.

[2]  The Defendant is CitiMortgage, Inc.

In June 2009, one of the Plaintiffs called the Defendant's customer service line.  See Defendant's Rule 56 Statement ¶ 17; Plaintiffs' Rule 56 Statement ¶ 3; Banker Deposition 95:4-5.[3]

That is where the undisputed facts end.

On the Plaintiffs' account, the Defendant agreed to two things on the June 2009 phone call.  See Plaintiffs' Rule 56 Statement ¶¶ 4-5; Banker Deposition 114:2-117:2.

First, to reduce the Plaintiffs' monthly mortgage payment from around $6,000 to around $4,000.  See Plaintiffs' Rule 56 Statement ¶ 5; Banker Deposition 114:8.

And second, if those reduced payments were made for three consecutive months, to permanently modify the Plaintiffs' mortgage, in connection with a government program.  See Banker Deposition 116:1-2.[4]

On the Defendant's account, much less happened during the June 2009 call.  The Plaintiffs asked to temporarily make reduced mortgage payments because of financial hardship.  The Defendant may have agreed to a payment reduction, see Defendant's Responses to Plaintiff's Written Deposition Questions ¶¶ 178, 182, 300, but not to an eventual permanent mortgage modification.  See id.; Defendant's Rule 56 Statement ¶¶ 18-19.

### B. Procedural History

The Plaintiffs filed this lawsuit in state court in 2015, and the Defendant removed the case here.  See Defendant's Motion for Summary Judgement 5 ("Defendant's Brief").

The Plaintiffs' core claim is that the Defendant broke the alleged Temporary Payment Plan Agreement.  See Plaintiffs' Motion for Summary Judgement 2 ("Plaintiffs' Brief").  How?  By

---

[3]  "Banker Deposition" refers to the transcript of the 2017 deposition of one of the Plaintiffs.  The transcript was attached to the Defendant's Certification of Counsel.

[4]  The two-part agreement alleged by the Plaintiffs --- a temporary reduction in payments, and, eventually, a permanent mortgage modification --- is referred to from here as the "Temporary Payment Plan Agreement."

not eventually modifying their mortgage as, on the Plaintiffs' account, had been agreed.  See id.

After motion practice a number of years ago, two claims now remain in the case: a breach of contract claim, and a claim for violation of New Jersey's Consumer Fraud Act.

Discovery was undertaken, and during June 2023 each party moved for summary judgment.

These motions are now before the Court.[5]

### C. The Motions

The Defendant has moved for summary judgment on the breach of contract claim and the New Jersey Consumer Fraud Act claim.  See Defendant's Brief 7, 10, 13, 15.

The Plaintiffs have moved for summary judgment on the New Jersey Consumer Fraud Act claim.  See Plaintiffs' Brief 5.[6]

After brief consideration of the legal standards that apply across the board (Part II below), the Court analyzes, each in turn, the Defendant's seven arguments for summary judgment (in Part III through Part IX), and the Plaintiffs' two arguments for summary judgment (in Part X through Part XI). A brief conclusion follows (in Part XII).

### II.  The Summary Judgment Standard

As noted, each party has filed a motion for summary judgment. Such a motion should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

---

[5]  This case was reassigned to the undersigned on May 24, 2023.

[6]  In their reply brief, the Plaintiffs assert they also moved for summary judgement on their breach of contract claim.  See Plaintiffs' Brief in Reply to Defendant's Opposition 2.  But the only claim addressed in the argument section of their opening brief is the Consumer Fraud Act claim.  See Plaintiffs' Brief 5. For example, while the Plaintiffs' argument addresses in some detail the three elements of a claim under the Consumer Fraud Act, see id. at 7-13, it presses no argument about the breach of contract claim.

56(a); see also Dupree v. Younger, 598 U.S. 729, 737 (2023);
Cellco P'ship v. White Deer Twp. Zoning Hearing Bd., 74 F.4th
96, 100 (3d Cir. 2023).

"A factual dispute is material if it might affect the outcome of
the suit under the governing law." Canada v. Samuel Grossi &
Sons, Inc., 49 F.4th 340, 345 (3d Cir. 2022) (cleaned up); see
also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Such a dispute is genuine "if the evidence is such that a
reasonable jury could return a verdict for the nonmoving
party[.]" SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 203-
204 (3d Cir. 2022).

In assessing a summary judgment motion, "a district court may
not make credibility determinations or engage in any weighing of
the evidence[.]" Marino v. Indus. Crating Co., 358 F.3d 241,
247 (3d Cir. 2004).  Rather, the court must "view the facts in
the light most favorable to the non-moving party and [draw] all
reasonable inferences in that party's favor." Canada, 49 F.4th
at 345 (cleaned up); accord Tolan v. Cotton, 572 U.S. 650, 660
(2014).

### III.  The Defendant's First Summary Judgment Argument: The Breach of Contract Claim Is Time-Barred

As noted, the Plaintiffs' breach of contract claim is based on
the contention that the Defendant breached the Temporary Payment
Plan Agreement.  See footnote 4 above (defining the Agreement).

The Defendant argues: the breach of contract claim was filed too
late, and it is therefore entitled to summary judgment.

#### A. General Principles

"Civil claims must generally be filed within a certain amount of
time." Kaul v. Marino, 2023 WL 7118724, at *2 (D.N.J. Oct. 27,
2023).  That amount of time is called a limitations period.  If
a claim is not brought within the limitations period, it "must
ordinarily be dismissed." Id.

The Plaintiffs' complaint does not specify which state's law applies to the breach of contract claim. <u>See</u> Amended Complaint 13-14.

But both parties' briefs assume New Jersey law controls. <u>See</u> Defendant's Brief 10, 13-15; Plaintiffs' Reply 13. And "[w]here parties' briefs assume that a particular forum's law controls, such implied consent . . . is sufficient to establish choice of law." <u>Marino</u> v. <u>Brighton Gardens of Mountainside</u>, 2023 WL 6366013, at *2 (D.N.J. Sept. 29, 2023) (collecting cases) (cleaned up). Accordingly, the Court will apply New Jersey law.

Under New Jersey law, the limitations period for the Plaintiffs' breach of contract claim is six years. <u>See</u> N.J.S.A. 2A:14-1; <u>see also Azze</u> v. <u>Hanover Ins. Co.</u>, 336 N.J. Super. 630, 636 (N.J. Super. App. Div. 2001).[7]

The limitations period runs from when the relevant contract was breached, <u>see Metromedia Co.</u> v. <u>Hartz Mountain Assocs.</u>, 139 N.J. 532, 535 (1995); <u>County of Lockhart</u> v. <u>Dorrance Publ'g Co., Inc.</u>, 2023 WL 157323, at * 3 (D.N.J. Jan. 11, 2023) --- or, if later, from when the plaintiff learns, or reasonably should have learned, of the breach. <u>See O'Keefe</u> v. <u>Snyder</u>, 83 N.J. 478, 491 (N.J. 1980) ("a cause of action will not accrue until the injured party discovers, or by exercise of reasonable diligence and intelligence should have discovered, facts which form the basis of the cause of action").[8]

---

[7] In its opening brief, the Defendant contended that the Plaintiff's breach of contract claim was governed by the four year limitations period set out in N.J.S.A. 12A:2-725. <u>See</u> Defendant's Brief 7. The Defendant seems to have abandoned that argument, describing in its reply brief a six year limitations period. <u>See</u> Defendant's Reply 2. This change in position makes sense. The statute cited in the Defendant's opening brief applies to commercial transactions for a sale of goods. <u>See</u> N.J.S.A. 12A:2-725; <u>Stratis</u> v. <u>BMW of North Am., LLC</u>, 2023 WL 3092188, at *10 (D.N.J. Apr. 26, 2023). This case involves a real property mortgage, not a sale of goods.

[8] No meaningful time typically elapses between (a) the breach of contract and (b) the moment when the Plaintiff discovers the contract has been breached. <u>See County of Morris</u> v. <u>Fauver</u>, 153

### B. **The Defendant's Argument Is Not Persuasive**

Recall the Plaintiffs' breach of contract claim: (a) the Plaintiffs and the Defendant entered into an agreement (the Temporary Payment Plan Agreement, see footnote 4 above, made during the June 2009 call); and (b) the Defendant did not honor the Agreement, because it did not eventually modify the Plaintiffs' mortgage.

The Defendant contends this claim comes too late. Even if there was a Temporary Payment Plan Agreement, the Plaintiffs knew by August 12, 2009 that the Defendant had breached it. See Defendant's Brief 7-8. Therefore, the argument goes, the Plaintiffs needed to have filed their breach of contract claim within six years, by August 2015. See id. at 8. But the claim was filed, the Defendant notes, during September of 2015. See id.

The core support for this argument is a letter one of the Plaintiffs wrote, seemingly for both Plaintiffs, on August 12, 2009. See Defendant's Brief 8. The letter's first sentence:

> I am in receipt of your letter dated 08/03/09 wherein you state; "Your account is in default . . . we have told a credit bureau about a late payment, missed payment, or other default on your account."

See Defendant's Certification of Counsel, Exhibit F.

Based on this letter, the Defendant's argument is as follows.

Having been told on August 3 that their mortgage was in default, the Plaintiffs must have known by then that any alleged Temporary Payment Plan Agreement they had entered into was being breached. After all, the mortgage was not being modified, as

---

N.J. 80, 110-111 (N.J. 1998). Here, though, there may be some lapse of time. And when that is the case, the limitations period runs from the latter point --- when the Plaintiffs "discover[ed], or by exercise of reasonable diligence and intelligence should have discovered," the breach. See O'Keefe, 83 N.J. at 491.

the alleged Agreement anticipated.  Far from it.  The mortgage
was "in default," and the Plaintiffs were aware of this.  <u>See</u>
Defendant's Brief 8.

This argument, though, is not persuasive.

To see why, start with the law.  The question at issue here ---
when the "injured party should reasonably be aware that he or
she has suffered an injury" --- is "generally an issue of fact
to be determined by the jury," and "[o]nly where the facts are
so clear that reasonable minds cannot differ may the
commencement of the limitation period be determined as a matter
of law."  <u>Knopick</u> v. <u>Connelly</u>, 639 F.3d 600, 611 (3d Cir. 2011)
(cleaned up); <u>accord</u> <u>Goodman</u> v. <u>Mead Johnson & Co.</u>, 534 F.2d
566, 573 (3d Cir. 1976); <u>see generally</u> <u>Anderson</u>, 477 U.S. at
250-51 ("[i]f reasonable minds could differ as to the import of
the evidence" summary judgment should not be granted).

Here, consideration of the fuller body of the evidence makes it
clear that "reasonable minds can[] differ,"  <u>Knopick</u>, 639 F.3d
at 611, as to whether the Plaintiffs knew or should have known
during August 2009 that the Temporary Payment Plan Agreement was
being breached.

Consider three pieces of evidence.

First, take the second paragraph of the Plaintiffs' August 12
letter to the Defendant.  That paragraph reads:

> Please be advised that we were approved for a loan
> modification under CitiMortgage's Customer Hardship
> Assistance Program on 06/30/09 and have paid our modified
> mortgage payments of $4,088.69 prior to the 20th of the
> month as scheduled.  Further, prior to that approval of the
> loan modification, our mortgage was current.

<u>See</u> Defendant's Certification of Counsel, Exhibit F.

Second, consider the Defendant's August 18 letter, seemingly
responding to the August 12 letter:

8

> Thank you for your recent inquiry regarding your mortgage
> account.  We have requested that our Collections Department
> remove your account from any future call out programs.

See Defendant's Certification of Counsel, Exhibit G.

And third, note the evidence that the Plaintiffs continued to
make monthly mortgage payments to the Defendant, in August of
2009 and September of 2009.  See Certification of Cathlene
Banker ¶ 21.

From this, the Defendant concludes that the Plaintiffs knew by
August 2009 that their mortgage was in default, which in turn
implied that any Temporary Payment Plan Agreement was, the
Plaintiffs knew, being breached.

Is this the only conclusion a "reasonable mind" could come to?
No.  A "reasonable mind" could also draw another conclusion.
Namely:

The August 3 letter suggested that any Temporary Payment Plan
Agreement was being breached.  After all, if the mortgage was
being modified, why did the Defendant write to say it was in
default?  But the August 3 letter looks like an off-the-rack
form letter.  Form letters are sometimes wrong, and the
Plaintiffs wrote to the Defendant on August 12 to correct the
August 3 letter.  On August 18, the Defendant seemed to all-but
admit that the August 3 letter was erroneous, and to withdraw
its suggestion the Plaintiffs were in default.  See Defendant's
Certification of Counsel, Exhibit G ("our Collections Department
[will] remove your account from any future call out programs").
And in fact, after August 2009 the Plaintiffs kept making the
reduced mortgage payments the Temporary Payment Plan Agreement
envisioned.

Bottom line: as set out in the preceding paragraph, there is a
"reasonable" view of the evidence under which it is not clear
that the Plaintiffs knew or should have known by August 2009
that the Temporary Payment Plan Agreement had been breached;
therefore, summary judgment cannot be granted on the premise

that only one interpretation of the evidence, the Defendant's, is possible here.[9]

### IV.   The Defendant's Second Summary Judgment Argument: The New Jersey Consumer Fraud Act Claim Is Time-Barred

The Defendant's second argument is that it should be granted summary judgment on the Plaintiffs' New Jersey Consumer Fraud Act claim because the claim is time-barred.

The Act has a six year limitations period. See N.J.S.A. 2A:14-1. See also Spera v. Samsung Electronics of Am., Inc., 2014 WL 1334256, at *3 (D.N.J. Apr. 2, 2014); Ryan v. Liberty Mutual Fire Ins. Co., 234 F. Supp. 3d 612, 618 (D.N.J. 2017); Lockhart, 2023 WL 157323, at * 3.

The Defendant's argument for why the six-year limitations period has expired on the Consumer Fraud Act claim is the same as its argument for why the six-year limitations period has expired on the breach of contract claim. Each argument is unpersuasive for the same reasons.

### V.   The Defendant's Third Summary Judgment Argument: The Statute Of Frauds Bars The Breach of Contract Claim

The Plaintiffs' breach of contract claim, as noted, is that the Defendant violated the Temporary Payment Plan Agreement. See footnote 4 above.

But that alleged Agreement was oral. See Certification of Cathlene Banker ¶¶ 10-12. It is said to have largely been made on the June 2009 phone call, and no written and signed agreement was ever created. See id.

The Defendant notes that the New Jersey statute of frauds requires certain contracts to be in writing and signed, and

---

[9]  This conclusion is not altered by evidence that at some unspecified point during the summer of 2009, see Banker Deposition 152:2-10, a foreclosure notice was put on the Plaintiffs' door. See id. The notice could have been put up before the Defendant sent its August 18 letter. And if so, "reasonable minds" could see the foreclosure notice as an error that the Defendant later (in the August 18 letter) all-but admitted, and took back.

argues that the needs-to-be-in-writing category includes the Temporary Payment Plan Agreement.  See generally Defendant's Brief 10-12.

But this argument is not persuasive.  Note first that the statute of frauds governs, among others, agreements as to a "transfer [of] an interest in real estate," N.J.S.A. 25:1-13, and that a mortgage counts as "an interest in real estate" for the New Jersey statute of frauds.  See Gauco v. Galante, 6 N.J. 128, 137 (1951); Feldman v. Warshawsky, 125 N.J. Eq. 19, 20 (N.J. 1938); Leeper v. Weintraub, 642 A.2d 1032, 1034 (N.J. Super. Ct. App. Div. 1994).

The Defendant takes from this that the alleged Temporary Payment Plan Agreement[10] was covered by the New Jersey statute of frauds, and therefore needed to be written down and signed.  See Defendant's Brief 10-11.

But is this so?  Is a mortgage-related agreement structured like the Temporary Payment Plan Agreement covered by the New Jersey statute of frauds?

This is a question of New Jersey law, and to answer it "the decisions of the Supreme Court [of New Jersey] are the authoritative source[.]"  Spence v. Esab Grp., Inc., 623 F.3d 212, 216 (3d Cir. 2010).  But as to this question, the New Jersey Supreme Court has not issued a "controlling decision[.]" Popa v. Harriet Carter Gifts, Inc., 52 F.4th 121, 125 (3d Cir. 2022); Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000).

Therefore, the Court needs to "predict" how the Supreme Court of New Jersey will resolve the issue.  See Spence, 623 F.3d at 216. To do so, the Court considers a range of sources.  These include: federal court interpretations of the relevant state law, opinions from other jurisdictions on the issue, and broader principles that the Supreme Court of New Jersey applies in this

---

[10]  Recall that the Temporary Payment Plan Agreement was an agreement to make reduced mortgage payments for three months; if that was done, a mortgage modification through a government program would follow.  See footnote 4 above.

general area.  See In re Energy Future Holdings Corp., 842 F.3d
247, 254 (3d Cir. 2016); Schulman v. Zoetis, Inc., 2023 WL
4539476 at *2, 6 (D.N.J. July 14, 2023).

A first source: decisions of federal courts applying New Jersey
law.  There is one such decision.  It held that a temporary
payment plan agreement "is not itself a loan modification
contract; it is a contract to offer a modification agreement,
should [the plaintiffs] complete the trial period successfully."
Heyman v. CitiMortgage, Inc., 2019 WL 2642655, at *22 (D.N.J.
June 27, 2019) (emphasis in original).  Accordingly, the federal
court concluded, the New Jersey statute of frauds did not apply,
and the temporary payment plan agreement did not need to be in
writing.  See id.

A second source from which the Court can predict how the Supreme
Court of New Jersey would resolve the relevant issue looks to
how other courts, in other parts of the country, have resolved
the issue.  See In re Energy Future Holdings Corp., 842 F.3d at
254.

The Court has identified six cases that consider whether a
temporary payment plan agreement, of the kind at issue here, was
required by the relevant state's statute of frauds to be signed
and in writing.  Four cases say "no."  These are: Fennimore v.
Bank of Am., N.A., 2015 WL 7075814 at *9 (E.D. Pa. Nov. 12,
2015) (applying Pennsylvania law); U.S. Bank Nat'l Assoc. v.
Eichten, 184 Conn. App. 727, 778 (Con. App. Ct. 2018) (applying
Connecticut law); Nickerson-Reti v. Bank of Am., N.A., 2018 WL
2271013, at *9-11 (D. Mass. May 17, 2018) (applying
Massachusetts law); Chavez v. Indymac Mortg. Servs., 219 Cal.
App. 4th 1052, 1062 (Cal. App. Sept. 19, 2013) (applying
California law).[11]  Two cases say "yes."  These are: Clark v.
Green Tree Servicing LLC, 69 F. Supp. 3d 1203, 1219 (D. Col.
2014) (applying Colorado law); Fisher v. HSBC Bank, 332 F. Supp.
3d 435, 440 (D. Mass. 2018) (applying Massachusetts law).

_____

[11]  Cf. Aragao v. Mortg. Elec. Registration Sys., Inc. 22 F.
Supp. 3d 133, 139 n.6 (D. Mass. 2014) (applying Massachusetts
law).

In short: the balance of national authority is that a temporary payment plan agreement is not covered by the statute of frauds, and therefore does not need to be signed and in writing.

Third, the Court looks to the reasoning of the New Jersey Supreme Court's opinions to predict how that court will ultimately rule when presented with the question at hand.  See Alpizar-Fallas v. Favero, 908 F.3d 910, 915-16 (3d Cir, 2018); Pinkston v. City of Jersey City, 2023 WL 6888265, at *6 (D.N.J. Oct. 18, 2023).

The Supreme Court of New Jersey has emphasized that "[t]he primary design of the . . . statute of frauds," at least as to real property, "is to avoid the hazards attending the use of . . . oral testimony, and thus to make for stability in the titles to real estate."  Moses v. Moses, 140 N.J. Eq. 575, 584 (N.J. 1947).  This concern for ensuring the overall integrity of land records is widely shared.[12]  It implies that agreements should be written down to the extent they transfer or meaningfully alter real property interests, like a mortgage.  But this concern applies with much less force to agreements that could eventually lead to a transfer or alteration of real property interests. Why?  Because if the transfer or alteration actually happens it

---

[12]  See, e.g., Sheffield v. Hogg, 77 S.W.2d 1021, 1024 (Tex. 1934) (the statute of frauds allows "purchasers [to] rely on deed and lien records"); Philbin v. Carr, 129 N.E. 19, 27 (Ind. App. Ct. 1920) (a "prominent feature" of the statute of frauds is that it "serve[s] effectively to safeguard legal titles"); Wright v. Young, 176 P. 583, 585 (Az. 1918) ("[t]he stability of titles rest largely upon written instruments, and to protect titles this rule . . . ought to prevail"); Gaylord v. Gaylord, 63 S.E. 1028, 1032 (N.C. 1909) (the statute of frauds supports the "stability of titles which rest so largely on written instruments"); Joseph William Singer, Foreclosure and Failures of Formality, or Subprime Mortgage Conundrums and How to Fix Them, 46 Conn. L. Rev. 497, 512 (2013) (one of the purposes of the statute of frauds is to "clarify title to property and make a public record of that title available so potential purchasers and government entities know who claims an interest in any piece of real estate").

can and will be written down then, and the title record system's
integrity will thereby be ensured.[13]

In sum: the key sources here are a federal court decision
construing New Jersey law, the weight of national authority, and
one of the basic premises of New Jersey law in this area.[14]
Based on these, the Court predicts that the Supreme Court of New
Jersey would hold that the statute of frauds does not cover a
mortgage-related agreement structured like the Temporary Payment
Plan Agreement.

Accordingly, the Defendant's third summary judgment argument is
rejected.  It rests on the erroneous premise that the statute of
frauds required the Agreement to be in writing.[15]

## VI.   The Defendant's Fourth Summary Judgment Argument:

---

[13]  In a related vein, note that under New Jersey law a contract
for the sale of land must be in writing, but a contract as to
when the sale of land will be executed does not generally need
to be in writing.  See Stryker v. Vanderbilt, 25 N.J.L 482, 496
(N.J. 1856); Schlecter v. Hollander, 11 N.J. Super. 236, 240-41
(N.J. Super. App. Div. 1951); see also 4 Corbin on Contracts §
17.8 (2023).  The alleged Temporary Payment Plan Agreement is
analogous.  It is not an agreement to modify a mortgage.  It is,
rather, an agreement as to when a mortgage modification might
take place, and under what circumstances.

[14]  An important source here would have been any decisions of
intermediate New Jersey appellate courts.  See Schulman, 2023 WL
4539476 at *2.  But the Court has not located one.  The closest
intermediate appellate case, JPMorgan Chase Bank, Nat'l Assoc.
v. Shivaram, 2020 WL 1026933 (N.J. Super. Ct. App. Div. Mar. 3,
2020), states, in what may be dicta, that the mortgage
modification obtained by a mortgage holder following
participation in a temporary payment plan must be in writing.
This is consistent with broader principles of New Jersey set out
above, in the text associated with footnote 12 and 13.  But the
fact that a mortgage modification must be in writing does not
shed light on the question here --- whether an agreement that
could lead to a mortgage being modified must be in writing.  See
id. at *3.

[15]  In one footnote in their opening brief the Defendant invokes
another section of the statute of frauds.  See Defendant's Brief
12 n.2  But an argument based on this section was never
developed by the Defendant and it is not considered here.

### The Mortgage Barred Verbal Alterations

The Defendant's fourth summary judgment argument: the Temporary
Payment Plan Agreement needed to be in writing because it
envisioned a possible mortgage modification, and the underlying
mortgage said that all mortgage modifications had to be in
writing.

But the parties to a contract can agree to modify it.  See,
e.g., County of Morris v. Fauver, 153 N.J. 80, 99–100 (1998);
Elliot & Frantz, Inc. v. Ingersoll-Rand Co., 457 F.3d 312, 322
(3d Cir. 2006).  And under New Jersey law, the parties agree to
orally modify a contract even if the contract itself a no-oral-
modification clause.  See Lewis v. Travelers Inc. Co., 51 N.J.
244, 253 (1968); Foster v. McGee, 2009 WL 3078729, at *6 (N.J.
Sup. Ct. App. Div. Sept. 28, 2009); Norwood-Jeb, L.L.C. v. N.
River Mews Assoc., L.L.C., 2009 WL 1010963, at *7 (N.J. Sup. Ct.
App. Div. Apr. 15, 2009); Sodora v. Sodora, 768 A.2d 840, 842
(N.J. Super. St. App. Div. 2000); Stags Leap Ranch Dev., LLC v.
Sevenson Env't Serv. Inc., 2018 WL 4522041, at *2 (D.N.J. Sept.
21, 2018); McGrath v. Poppleton, 550 F. Supp. 2d 564, 571
(D.N.J. 2008); 10 Williston on Contracts § 29:42 (4th ed.).

### VII.  The Defendant's Fifth Summary Judgment Argument: Lack of Specificity

The Defendant's next argument: the Plaintiffs cannot prevail on
a breach of contract claim because the alleged contract, the
Temporary Payment Plan Agreement, did not include certain key
terms and therefore was not detailed enough to be enforceable.
See Defendant's Brief 13.

This is not persuasive.  Under New Jersey law, parties can make
"changes or amendments to a contract," Fauver, 153 N.J. at 100
(cleaned up), and when they do, those contract terms that do not
purport to have been changed or amended remain in effect.  See
Wells Reit II-80 Park Plaza, LLC v. Director, Div. of Taxation,
999 A.2d 489, 497 (N.J. Super. Ct. App. Div. 2010).  "A contract
modification is a change in one or more respects which
introduces new elements into the details of a contract and
cancels others but leaves the general purpose and effect
undisturbed."  Id.  Modification "leaves the original contract
in place," other than the terms that were modified.  Id.  As the
state's highest court has put it: "the original contract should

15

continue in full force and effect except as modified[.]"
Middlesex Concrete Prod. & Excavating Corp. v. N. State
Improvement Co., 129 N.J. Eq. 314, 320 (N.J. 1941).[16]

Here, as alleged by the Plaintiffs, the Temporary Payment Plan
Agreement had two parts: that the Defendant would accept lower
payments, and that after three months of reduced payments the
Plaintiffs would be given a permanent loan modification.  See
Certification of Cathlene Banker ¶¶ 11-12.  It cannot be said as
a matter of law that this alleged Agreement was insufficiently
detailed.  It did not speak to numerous basic contracting
subjects.  But those were presumably set out in the underlying
mortgage between the Plaintiffs and the Defendant, and the
Temporary Payment Plan Agreement did not purport to fully
displace that mortgage.

### VIII.    The Defendant's Sixth Summary Judgment Argument: Unlawful Conduct Under The Consumer Fraud Act

Next, the Defendant argues it is entitled to summary judgment on
the Plaintiffs' Consumer Fraud Act claim because the Plaintiff
cannot establish one of the elements of that claim, unlawful
conduct.  See Defendant's Brief 16.

Unlawful conduct is indeed an element of a Consumer Fraud Act
claim.  See Int'l Union of Operating Eng'rs Local No. 68 Welfare
Fund v. Merck & Co., Inc., 192 N.J. 372, 389 (2007) (so
holding).  And a misrepresentation can count as unlawful
conduct.  See Cox v. Sears Roebuck & Co., 138 N.J. 2, 17 (1994).

Here, the Plaintiffs argue the Defendant made a
misrepresentation when it allegedly agreed to the Temporary

---

[16]  The Middlesex decision is from the New Jersey Court of Errors
and Appeals, which was the state's highest court until
ratification of the New Jersey Constitution of 1947.  When, as
here, a federal court sitting in diversity must determine the
content of state law, "the decisions of the [New Jersey] Supreme
Court are the authoritative source."  Spence, 623 F.3d at 216.
Decisions of the New Jersey Court of Errors and Appeals are also
an "authoritative source."  See Brighton Gardens of
Mountainside, 2023 WL 6366013, at *10.

Payment Plan Agreement during the June 2009 call.  <u>See</u>
Plaintiffs' Brief 10.

The Defendant argues it is "impossible" the Agreement was made,
Defendant's Brief 16, because its records show the "conversation
never occurred" the way the Plaintiffs say it did.  <u>Id</u>.

But the sworn testimony from one of the Plaintiffs is that it
did.  <u>See</u> Plaintiffs' Rule 56 Statement ¶¶ 4-5; Banker
Deposition 115:17-24.  And "[a] single, non-conclusory . . .
witness's testimony, when based on personal knowledge and
directed at a material issue, is sufficient to defeat summary
judgement." <u>Paladino</u> v. <u>Newsome</u>, 885 F.3d 203, 209 (3d Cir.
2018) (cleaned up); <u>accord</u>, <u>e.g.</u>, <u>Lupyan</u> v. <u>Corinthian Colleges,</u>
<u>Inc.</u>, 761 F.3d 314 at 320-21 (3d Cir. 2014); <u>Kirleis</u> v. <u>Dickie,</u>
<u>McCamey & Chilcote, P.C.</u>, 560 F.3d 156, 161 (3d Cir. 2009).

Here, these standards were met.  The Plaintiff's deposition
testimony is based on alleged personal knowledge.  She says she
was on the June 2009 call.  <u>See</u> Banker Deposition 113.  And the
Plaintiff's testimony was not conclusory.  She described the
call, and the Agreement that allegedly emerged from it, in
meaningful detail --- what was said about how much the
Plaintiffs would need to pay, <u>see</u> <u>id</u>. at 114, when payments
would be due, <u>see</u> <u>id</u>. at 116:23, and how the Plaintiffs would
receive documentation to sign to obtain a permanent mortgage
modification.  <u>See</u> <u>id</u>. at 115:21-24.

Given this testimony, whether the June 2009 phone call happened
and what was said during it is a question for the jury, not one
to be taken from them by a grant of summary judgment.

### IX.  <u>The Defendant's Seventh Summary Judgment Argument:</u>
### <u>Loss Under The Consumer Fraud Act</u>

Finally, the Defendant argues it is entitled to summary judgment
on the Plaintiffs' Consumer Fraud Act claim because the
Plaintiff cannot establish one of the elements of that claim,
ascertainable loss.  <u>See</u> <u>Merck & Co., Inc.</u>, 192 N.J. at 389.

The basis of this argument is the Defendant's expert report.
The report is said to show that not receiving a mortgage
modification did not harm the Plaintiffs --- in part because,
following the above-described 2009 events, they were able to
stay in their home for a number of years without making any

mortgage payments.  <u>See</u> Defendant's Brief 21; Defendant's Expert Rebuttal Report (Marsha J. Courchane) ¶ 8.

But the Plaintiffs have presented an expert report of their own, and it is seems to show they <u>did</u> suffer a loss.  <u>See</u> Plaintiffs' Expert Report of Economic Losses (David Gouiran) 5.  These expert reports pull in opposite directions.  Choosing which expert to credit and grappling with their divergent views is the jury's job here.  It is not for the Court to choose sides, and then to grant summary judgment on that basis.[17]

### X.   The Plaintiffs' First Summary Judgment Argument: Loss Under The Consumer Fraud Act

The Plaintiffs argue they have shown they were financially harmed by being denied a permanent mortgage modification, and

---

[17]  For some examples of courts reaching roughly this conclusion in analogous contexts: <u>Phillips</u> v. <u>Cohen</u>, 400 F.3d 388, 398 (6th Cir. 2005) (weighing expert reports "amounts to improper fact-finding" by the court); <u>Edwards Sys. Tech. Inc.</u> v. <u>Digit. Control Sys., Inc.</u>, 99 F. App'x 911, 921 (Fed. Cir. 2004) ("there seems to be a classic 'battle of the experts' which renders summary judgment improper"); <u>Goldman</u> v. <u>Standard Ins. Co.</u>, 341 F.3d 1023, 1036 (9th Cir. 2003) ("[w]ho is correct in this battle of experts is not for use to decide"); <u>St. Paul Fire & Marine Ins. Co.</u> v. <u>Tanners Ave. Corp.</u>, 2023 WL 5605613, at *3 (D.N.J. Aug. 30, 2023) (denying summary judgment in part because of the conflicting expert opinions as to a material issue); <u>Hickey</u> v. <u>Merritt-Scully</u>, 2022 WL 883851, at *11 (M.D. Pa. Mar. 24, 2022) ("when presented with several competing expert reports . . . on summary judgment the court may not invade the function of the jury"); <u>Nelson</u> v. <u>Am. Honda Motor Co., Inc.</u>, 2021 WL 2877919, at *5 (W.D. Pa. May 17, 2021) (a "battle of the experts" "typically precludes" granting a motion for summary judgement); <u>In Re Asbestos Prod. Liab. Litig.</u>, 2010 WL 3928658, at *3 n.6 (E.D. Pa. Jun. 10, 2010) ("I am left with contrary . . . opinions offered by the parties' experts. . . . [T]his 'battle of the experts' creates a genuine issue of material fact . . . , thus . . . precluding summary judgment").  For the more general principle that undergirds much of the above, <u>see</u> <u>Marino</u>, 358 F.3d at 247 (in assessing a summary judgment motion, "a district court may not make credibility determinations or engage in any weighing of the evidence").

are therefore entitled to summary judgment. <u>See</u> Plaintiffs'
Brief 11.

However, the Defendant's expert report, as noted above, is to
the opposite effect.  Therefore, for the reasons set out above,
<u>see</u> Part IX, the Plaintiffs' motion for summary judgment is
denied.

### XI.   The Plaintiffs' Second Summary Judgment Argument: Unlawful Conduct Under The Consumer Fraud Act

Finally, the Plaintiffs argue they are entitled to summary
judgment on their Consumer Fraud Act claim because the Defendant
has not disputed the testimony offered by the Plaintiffs about
the substance of the June 2009 call.  <u>See</u> Plaintiffs' Brief 9.

But the Defendant has disputed this testimony.  For example, the
Defendant has put forth evidence that the records that would
necessarily have been created in connection with the Temporary
Payment Plan Agreement do not, in fact, exist.  <u>See</u> Defendant's
Brief 16; Defendant's Certification of Counsel, Exhibit H;
Defendant's Responses to Plaintiff's Written Deposition
Questions ¶ 267.  In addition, the Defendant has offered
testimony that the customer service representative on the June
2009 call did not have access to the necessary software to
determine if the Plaintiffs were eligible for a modification.
<u>See</u> Defendant's Responses to Plaintiff's Written Deposition
Questions ¶¶ 267-268.

All of this could arguably suggest that, contrary to the
testimony of the Plaintiff, no Temporary Payment Plan Agreement
was made during the June 2009 call.  And making such an argument
is to dispute the Plaintiff's testimony.

### VII. Conclusion

For the reasons set out above, the summary judgement motions are
denied.


IT IS on this 14th day of November, 2023, so **ORDERED**.

Michael E. Farbiarz, U.S.D.J.